# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Shenzhen Kangmingcheng Technology Co., Ltd.,**<br><br>                Plaintiff,<br><br>  v.<br><br>**PDD HOLDINGS INC., a Cayman Islands Corporation, WhaleCo, Inc., a Delaware corporation, Romantic Room Y, SkyDay, Narcissus, Sunangmas, KOWSi, RONGCHENG,**<br><br>                Defendants. | **CIVIL ACTION NO. 1:23-cv-02697**<br><br>**Hon. Edmond E. Chang** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WHALECO INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT[1]

---

[1] On June 27, 2023, Temu's counsel informed Hicober's counsel that it would move to dismiss the FAC in its entirety and asked Hicober whether there is an objection to such motion. Hicober responded that it planned to oppose the motion.

# TABLE OF CONTENTS

|     |     | Page |
| --- | --- | --- |
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF FACTS | 2 |
| | A. The Temu Platform | 2 |
| | B. Temu's Intellectual Property Policy | 2 |
| | C. Hicober, Its Hair Towels, and the Present Lawsuit | 3 |
| III. | PLAINTIFF FAILS TO STATE ANY CLAIM UNDER FEDERAL LAW | 5 |
| | A. Temu Is Not Directly Liable Under the Lanham Act. | 5 |
| | B. Temu Is Not Contributorily Liable For Infringement Under the Lanham Act. | 8 |
| IV. | PLAINTIFF FAILS TO STATE ANY CLAIM UNDER STATE LAW | 10 |
| | A. Temu's Conduct Did Not Occur Primarily and Substantially in Illinois. | 10 |
| | B. Plaintiff's State Law Claims Fail Along With the Lanham Act Claims. | 11 |
| V. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ak Futures LLC v. LCF Labs Inc.*,
   No. 8:21-cv-02121, 2022 U.S. Dist. LEXIS 231481
   (C.D. Cal. Sept. 28, 2022) .................................................................................................. 8

*AM Gen. Corp. v. DaimlerChrysler Corp.*,
   311 F.3d 796 (7th Cir. 2002) ............................................................................................... 5

*Am. Nat'l Ins. Co. v. Am. Nat'l Advisors, LLC*,
   No. 11-cv-4016, 2014 U.S. Dist. LEXIS 163294 (N.D. Ill. Nov. 21, 2014) ...................... 11

*Annie Oakley Enters., Inc. v. Amazon.com, Inc.*,
   559 F. Supp. 3d 780 (S.D. Ind. 2021) .................................................................................. 9

*Avery v. State Farm Mut. Auto Ins. Co.*,
   835 N.E.2d 801 (Ill. 2005) ................................................................................................. 10

*Bedrock Mgmt. v. Peoples Choice Entm't, Inc.*,
   No. 14-cv-06624, 2014 U.S. Dist. LEXIS 142023 (N.D. Ill. Oct. 6, 2014) ...................... 11

*Bravado Int'l Grp. v. Gearlaunch, Inc.*,
   No. 16-CV-8657, 2018 U.S. Dist. LEXIS 226642 (C.D. Cal. Feb. 9, 2018) ....................... 6

*Brewer v. Affinity Dev. Grp.*,
   No. 21 C 6580, 2022 U.S. Dist. LEXIS 228512 (N.D. Ill. Dec. 20, 2022) ......................... 7

*Chanel, Inc. v. RealReal, Inc.*,
   449 F. Supp. 3d 422 (S.D.N.Y. Mar. 30, 2020) ............................................................. 6, 7

*Clairol, Inc. v. Andrea Dumon, Inc.*,
   14 Ill. App. 3d 641 (Ill. Ct. App. 1973) ............................................................................. 10

*Control Sols. Ltd. Liab. v. Oshkosh Corp.*,
   No. 10 C 121, 2011 U.S. Dist. LEXIS 32894 (N.D. Ill. Mar. 28, 2011) ............................ 5

*David Berg & Co. v. Gatto Int'l Trading Co.*,
   884 F.2d 306 (7th Cir. 1989) .............................................................................................. 8

*Desmond v. Chi. Boxed Beef Distribs.*,
   921 F. Supp. 2d 872 (N.D. Ill. 2013) ................................................................................ 11

*FireBlok IP Holdings, LLC v. Hilti, Inc.*,
   No. 3:19 cv 50122, 2021 U.S. Dist. LEXIS 243052
   (N.D. Ill. Dec. 21, 2021) ................................................................................................... 11

*Flava Works, Inc. v. Gunter*,
   No. 17 C 1171, 2018 U.S. Dist. LEXIS 14183 (N.D. Ill. Jan. 30, 2018) .......................... 12

*Glob. Merch. Servs., Ltd v. Sunfrog, LLC*,
    No. 17 Civ. 10154, 2018 U.S. Dist. LEXIS 135593
    (S.D.N.Y. Aug. 8, 2018) ...................................................................................................6

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
    206 F. Supp. 3d 869 (S.D.N.Y. 2016).............................................................................8, 9

*H-D U.S.A., LLC v. SunFrog, LLC*,
    282 F. Supp. 3d 1055 (E.D. Wis. 2017)...............................................................................6

*H-D U.S.A., LLC v. SunFrog, LLC*,
    311 F. Supp. 3d 1000 (E.D. Wis. 2018)...............................................................................6

*Hendrickson v. Amazon.com, Inc.*,
    298 F. Supp. 2d 914 (C.D. Cal. 2003) .................................................................................6

*Inwood Lab'ys, Inc. v. Ives Lab'ys Inc.*,
    456 U.S. 844 (1982) .............................................................................................................8

*Jackman Fin. Corp. v. Humana Ins. Co.*,
    No. 08 C 5784, 2009 U.S. Dist. LEXIS 21546 (N.D. Ill. Mar. 12, 2009),
    *aff'd*, 641 F.3d 860 (7th Cir. 2011)..................................................................................6, 7

*Juul Labs v. Chou*, No. CV 21-3056 DSF (PDx),
    2021 U.S. Dist. LEXIS 207138 (C.D. Cal. June 9, 2021) ...................................................5

*Lopez v. Bonanza.com, Inc.*,
    17 Civ. 8493, 2019 U.S. Dist. LEXIS 170715 (S.D.N.Y. Sept. 30, 2019) ......................8, 9

*Maui Jim, Inc. v. SmartBuy Guru Enters.*,
    386 F. Supp. 3d 926 (N.D. Ill. 2019) .................................................................................10

*Maui Jim, Inc. v. SmartBuy Guru Enters.*,
    No. 1:16 cv 9788, 2018 U.S. Dist. LEXIS 10093 (N.D. Ill. Jan. 23, 2018) ................10, 11

*Microsoft Corp. v. Rechanik*,
    249 F. App'x 476 (7th Cir. 2007) ......................................................................................11

*MJ & Partners Restaurant Ltd. v. Zadikoff*,
    10 F. Supp. 2d 922 (N.D. Ill. 1998) ...................................................................................10

*Monotype Imaging, Inc. v. Bitstream Inc.*,
    376 F. Supp. 2d 877 (N.D. Ill. 2005) ...................................................................................9

*Phillips v. Prudential Ins. Co. of Am.*,
    714 F.3d 1017 (7th Cir. 2013) .............................................................................................7

*Spex, Inc. v. Joy of Spex, Inc.*,
    847 F. Supp. 567 (N.D. Ill. 1994) ......................................................................................12

*Tiffany (NJ) Inc. v. eBay, Inc.*,
    600 F.3d 93 (2d Cir. 2010)...............................................................................................6, 9

*Tre Milano, LLC v. Amazon.com, Inc.*,
  No. B234753, 2012 Cal. App. LEXIS 6163 (Cal. Ct. App. Aug. 22, 2012) ...................6, 8

*Underground Sols., Inc. v. Palermo*,
  No. 13 C 8407, 2014 U.S. Dist. LEXIS 132441 (N.D. Ill. Sept. 22, 2014).......................10

*Van Zeeland v. McNally*,
  532 F. Supp. 3d 557 (N.D. Ill. 2021) ...............................................................................10

*Vulcan Golf, LLC v. Google, Inc.*,
  552 F. Supp. 2d 752 (N.D. Ill. 2008) ...............................................................................11

*Watts v. Network Sols., Inc.*,
  1999 U.S. App. LEXIS 28884 (7th Cir. Oct. 27, 1999)......................................................8

**STATUTES**

Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510 .......................................... *passim*

Lanham Act, 15 U.S.C. § 1114..................................................................................................4, 5

Lanham Act, 15 U.S.C. § 1125(a) .............................................................................................4, 5

Lanham Act, 15 U.S.C. § 1125(c) .............................................................................................4, 5

**TREATISES**

5 J. Thomas McCarthy, McCarthy on Trademarks § 25:10 (5th ed. 2020) ......................................5

I.  **INTRODUCTION**

Defendant Whaleco Inc. (d.b.a. "Temu") takes allegations of trademark infringement seriously. In its First Amended Complaint ("FAC"), Plaintiff Shenzhen Kangmingcheng Technology Co., Ltd. (d.b.a. "Hicober") alleges that third-party sellers unlawfully used the Hicober trademark in connection with the sale of hair towels on Temu.com. Temu has removed every allegedly infringing product listing identified by Hicober. Any remaining grievances should be directed to the third-party sellers that manufactured and sold the allegedly infringing goods.

Hicober cannot justify extending liability to Temu. Temu merely owns and operates the online platform that connects consumers with third-party sellers. The FAC does not allege that Temu itself committed the infringing acts, intentionally induced the infringements, or even knew about them. Any infringement was committed by the third-party sellers who manufactured the towels, created the product listings, and used the Hicober mark. To the contrary, Temu has taken affirmative action to remove the listings from its site.

The claims against Temu fail as a matter of law. The federal Lanham Act claims only apply to parties actively involved in the infringement itself—here, the third-party vendors that manufactured and sold the allegedly infringing hair towels. And without any non-conclusory facts alleging intentional inducement or knowledge, there is no basis for Temu to be contributorily liable. The state law claims fare no better. As a threshold matter, they are meant to address conduct occurring "primarily and substantially in Illinois," but the FAC contains no Illinois-specific allegations. But even if state law applied, it imposes the same substantive requirements as the Lanham Act. The claims therefore fail for the same reasons. This Court should grant Temu's motion to dismiss.

## II. STATEMENT OF FACTS

### A. The Temu Platform

Defendant Whaleco Inc. owns and operates Temu, an online shopping platform where consumers can buy goods through Temu's website (https://temu.com) and corresponding mobile application. FAC ¶ 5. On Temu, third-party vendors sell their products to consumers. *Id.* ¶ 6.

All of the products available on Temu's platform are manufactured, listed, and supplied by these third-party sellers. FAC ¶¶ 8-9. The third-party sellers create their own product listings on the Temu platform. *Id.* ¶ 97. They decide what to sell and what to display in each listing. *Id.* ¶¶ 9, 27-32. They manufacture and supply the products. *Id.* Temu facilitates delivery, working with third-party shippers (*i.e.*, DHL, UPS, FedEx). *See* FAC ¶¶ 9, 34-35; Exhibit 1 at 3, 8.

### B. Temu's Intellectual Property Policy

Temu has strict intellectual-property policies that govern its platform. Intellectual Property Policy ("IP Policy");[2] Terms of Use.[3] Third-party sellers "are responsible for ensuring that they have all the necessary rights to their content." IP Policy. Users must "undertake to comply with all . . . trademark rules . . . and not [] copy, reproduce, modify, translate, publish, broadcast, transmit, distribute, perform, upload, display, license, sell, or otherwise use for any purpose any Content not owned by you without the prior consent of the owner." Terms of Use.

To deal with potential infringement, Temu has a notice-and-takedown procedure. An aggrieved entity may report alleged infringement to Temu at ipprotection@temu.com. IP Policy. The report must be "made in good faith, sworn under penalty of perjury," and must provide "proof of rights, information of rights holders and preliminary evidence of the infringement"

---

[2] *Available at* https://www.temu.com/intellectual-property-policy.html.
[3] *Available at* https://www.temu.com/terms-of-use.html?refer_page_name=home&refer_page_id=10005_1686961785352_dv2nsozs8i&refer_page_sn=10005&_x_sessn_id=f6mxm581kc.

from the owner (or someone authorized to act on behalf of the owner) of the trademark. *Id.* Temu will investigate and, when it receives a proper report, remove the product listing. *Id.*

C.  **Hicober, Its Hair Towels, and the Present Lawsuit**

Plaintiff Shenzhen Kangmingcheng Technology Co., Ltd. sells products in the United States under the Hicober name. FAC ¶¶ 3, 19. In particular, it sells hair towels exclusively on the Amazon platform. *Id.* These hair towels are made of "super-absorbent microfiber" that claim to be gentler on hair than a traditional towel. "Hicober Microfiber Hair Towel," Amazon.[4]

Hicober discovered third-party sellers selling hair towels on Temu and some photos on the product listings included the Hicober mark. Apparently, these towels were not the Hicober towels, were of inferior quality, and were sold on listings displaying the Hicober mark without permission. FAC ¶¶ 9, 27-32, 40-41.



Hicober's Amazon Listing (FAC ¶ 20)

---

[4] *Available at* https://www.amazon.com/Microfiber-Hicober-Turbans-Drying-Towels/dp/B08S31RWBK.

3



Romantic Room Y's Listing on Temu (FAC, Ex. 3)

Although not mentioned in the Complaint, on March 15, 2023, Hicober notified Temu of alleged infringement on the Temu platform. Declaration of Kailin Zhang ("Zhang Decl.") ¶ 8, May 22, 2023, ECF No. 27-1. This notification did not, however, (i) identify any specifically infringing listing; (ii) provide any information about Hicober's alleged trademark; (iii) make a statement in good faith and under penalty of perjury that Hicober's rights have been violated; or (iv) contain a signature from someone authorized to act on behalf of Hicober. Temu confirmed receipt the next day, and substantively responded on March 19 asking for more information to address these deficiencies. *Id.* ¶¶ 9-11. On March 22, Hicober provided a url for one product listing and information about the Hicober trademark registration, but failed to provide the rest of the requested information. *Id.* ¶ 12. Two days later, Temu again responded that the notification was incomplete. *Id.* ¶ 13. Temu never heard back from Hicober. *Id.* ¶ 14.

Instead, Hicober filed a complaint on April 29, 2023, which it amended on May 31, 2023. It brings four federal claims and two Illinois state claims: trademark counterfeiting and infringement under 15 U.S.C. § 1114 (Count I); false designation of origin under 15 U.S.C. § 1125(a) (Count II); trademark dilution under 15 U.S.C. § 1125(c) (Count III); deceptive trade practices under Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 ILCS 510/1

(Count IV); unfair competition under Illinois common law (Count V); and contributory trademark infringement (Count VI).  FAC ¶¶ 55-101.

Despite the lack of a proper takedown notice, Temu has removed all of the allegedly infringing product listings contained in the FAC.  Hr'g Tr., 3:18-19, 6:6-8, June 5, 2023, ECF No. 36.  Temu removed the listings by third-party sellers Romantic Room Y, SkyDay, Narcissus, Sunangmas, and KOWSi on May 12, 2023.  And, it removed the listing by seller RONGCHENG on May 16, 2023.  Zhang Decl. ¶¶ 15-17.

## III. PLAINTIFF FAILS TO STATE ANY CLAIM UNDER FEDERAL LAW

Hicober brings three claims of direct infringement under the Lanham Act: trademark counterfeiting and infringement;[5] false designation of origin; and trademark dilution.  It also brings one claim for contributory infringement.  All fail to state a claim.

### A. Temu Is Not Directly Liable Under the Lanham Act

Hicober's three claims for direct liability under the Lanham Act all require a defendant to use a plaintiff's trademark in commerce.  *See* 15 U.S.C. §§ 1114, 1125(a), 1125(c).  "Use in commerce" is a necessary element for claims pursuant to Section 1114.  *See Control Sols. Ltd. Liab. v. Oshkosh Corp.*, No. 10 C 121, 2011 U.S. Dist. LEXIS 32894, at *8-9 (N.D. Ill. Mar. 28, 2011).  It is also required for Sections 1125(a) and 1125(c).  *See id.*; *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 811 (7th Cir. 2002) (dilution requires use in commerce).

---

[5] Hicober does not allege that the hair towels themselves are counterfeits.  Counterfeit merchandise "imitate[s] a well-known product in all details of construction and appearance so as to deceive customers into thinking they are getting genuine merchandise."  5 J. Thomas McCarthy, McCarthy on Trademarks § 25:10 (5th ed. 2020); *see also Juul Labs v. Chou*, No. CV 21-3056 DSF (PDx), 2021 U.S. Dist. LEXIS 207138, at *21 (C.D. Cal. June 9, 2021) (counterfeiting involves "the use of identical marks in connection with, supposedly, the same goods").  Hicober alleges that the hair towels are "low quality and mass market," but not that they are nearly identical in construction and appearance.  FAC ¶¶ 40, 43.

The FAC fails to allege that Temu "used" the Hicober mark. Temu owns and operates a platform that hosts third-party product listings. FAC ¶¶ 5-6, 34. A platform that connects buyers with third-party sellers does not "use" the trademarks on the sellers' product listings. *H-D U.S.A., LLC v. SunFrog, LLC*, 282 F. Supp. 3d 1055, 1059-60 (E.D. Wis. 2017); *Tre Milano, LLC v. Amazon.com, Inc.*, No. B234753, 2012 Cal. App. Unpub. LEXIS 6163, at *35-36 (Cal. Ct. App. Aug. 22, 2012); *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 102-03 (2d Cir. 2010); *Hendrickson v. Amazon.com, Inc.*, 298 F. Supp. 2d 914, 915 (C.D. Cal. 2003); *Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422, 441 (S.D.N.Y. Mar. 30, 2020). It is the third-party sellers themselves who use the mark and are directly liable. *Tiffany (NJ) Inc.*, 600 F.3d at 102-03.

To "use" a mark in commerce, a platform must be "actively involved in the infringing conduct" itself. *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1029-30 (E.D. Wis. 2018). Active involvement occurs when the platform creates the infringing product or affixes the infringing mark to the product before shipping it to consumers. *SunFrog, LLC*, 282 F. Supp. 3d at 1062; *SunFrog, LLC*, 311 F. Supp. 3d at 1029-30; *Bravado Int'l Grp. v. Gearlaunch, Inc.*, No. 16-CV-8657, 2018 U.S. Dist. LEXIS 226642, at *9-11 (C.D. Cal. Feb. 9, 2018); *Glob. Merch. Servs., Ltd v. Sunfrog, LLC*, No. 17 Civ. 10154, 2018 U.S. Dist. LEXIS 135593, at *16, 18-19 (S.D.N.Y. Aug. 8, 2018). There is no allegation in the FAC that Temu itself created the hair towels or added the Hicober mark to the product listings for the hair towels.

Hicober instead claims that Temu is "engaged in" or "responsible for" (1) the pricing of the goods, (2) the sale and marketing of the goods, and (3) the delivery of the goods. FAC ¶¶ 8, 34-35. The FAC contains no further allegations to support these conclusory claims. But even if credited, this is not enough for "active involvement." For that to occur, a platform must take on

the discretionary responsibility to authenticate, approve for sale, price, display, market, make available for sale, and maintain inventory of the goods. *Chanel*, 449 F. Supp. 3d at 441.

Hicober's conclusory assertion that Temu retains all pricing control is contradicted by the facts alleged in the FAC and the very article on which Hicober relies. FAC ¶ 33. Hicober later alleges that the third-party sellers—not Temu—"priced" the towels at "10% of the Plaintiff's price." *Id.* ¶¶ 38-39; *see Jackman Fin. Corp. v. Humana Ins. Co.*, No. 08 C 5784, 2009 U.S. Dist. LEXIS 21546, at *11 (N.D. Ill. Mar. 12, 2009) (specific allegations credited over conclusory), *aff'd*, 641 F.3d 860 (7th Cir. 2011). Indeed, the attached article cited in support states that "sellers *almost* gave up the pricing power." Ex. 1 at 8 (emphasis added). According to this article, the pricing control that Temu retains is the ability "to select the cheapest product" for its platform from comparable suppliers—a far cry from the discretionary power to set prices as a seller. *Id.* at 4;[6] *see Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (rejecting allegations that contradict exhibit).

The allegations that Temu is "responsible for" marketing and selling the towels are similarly conclusory and directly contradicted by the more specific ones. *See Jackman Fin. Corp.*, 2009 U.S. Dist. LEXIS 21546, at *11 (specific allegations credited over conclusory). The third-party sellers retain the ultimate discretion to sell. Those sellers—not Temu—created the product listings that improperly contained the Hicober mark and used those listings to sell their own goods. FAC ¶¶ 27-32. The product listings list the name of each third-party seller directly under the good's title. *Id.*, Exs. 3-8. Hosting a product listing is not enough. Temu may operate

---

[6] Hicober attached an incomplete version of this article to the FAC. Much of the text, including the portion quoted here, was obscured by formatting problems that appear to have occurred when Hicober printed the webpage to a pdf. Temu has attached a full-and-complete version of the webpage as Exhibit 1 to this Motion, which this Court can consider. *Brewer v. Affinity Dev. Grp.*, No. 21 C 6580, 2022 U.S. Dist. LEXIS 228512, at *11 n.3 (N.D. Ill. Dec. 20, 2022) (considering complete version of exhibit referenced in the complaint and central to allegations).

7

the underlying platform, but that alone does not mean that Temu itself sells the goods on its site and/or advertises the availability of those goods. *See Tre Milano, LLC*, 2012 Cal. App. Unpub. LEXIS 6163, at *36-37 (Amazon does not sell or advertise goods on product listings).

Finally, Hicober's delivery allegations do not go so far as to say that Temu itself imported, distributed, and transported the hair towels. The FAC only alleges the conclusions that Temu is "engaged in" or "responsible for" this activity. And, the article cited in support merely states that Temu "offers" free shipping to consumers, and that logistics and distribution are "taken care of by Temu." Ex. 1 at 3, 8. Even if credited, "[m]ere facilitation" of delivery logistics is not sufficient use in commerce to warrant direct liability. *Ak Futures LLC v. LCF Labs Inc.*, No. 8:21-cv-02121, 2022 U.S. Dist. LEXIS 231481, at *20-21 (C.D. Cal. Sept. 28, 2022) ("matching" third-party transportation services with shipments is not "use in commerce"); *see also Lopez v. Bonanza.com, Inc.*, 17 Civ. 8493, 2019 U.S. Dist. LEXIS 170715, at *17-21 (S.D.N.Y. Sept. 30, 2019) (no "use" even when platform shipped infringing products).

Absent any allegation that Temu actually "used" the Hicober mark in commerce, Hicober fails to state any claim under any theory of direct liability under the Lanham Act.

**B.     Temu Is Not Contributorily Liable For Infringement Under the Lanham Act**

Contributory infringement requires allegations of a defendant's <u>intent</u> or <u>knowledge</u> of the wrongful activities. *David Berg & Co. v. Gatto Int'l Trading Co.*, 884 F.2d 306, 311 (7th Cir. 1989). To be contributorily liable for infringement, a defendant must either (1) intentionally induce another to infringe a trademark or (2) supply a product to another with actual or constructive knowledge that the product is infringing. *Watts v. Network Sols., Inc.*, 1999 U.S. App. LEXIS 28884, at *6 (7th Cir. Oct. 27, 1999) (citing *Inwood Lab'ys, Inc. v. Ives Lab'ys Inc.*,

456 U.S. 844, 854 (1982)); *Monotype Imaging, Inc. v. Bitstream Inc.*, 376 F. Supp. 2d 877, 889-90 (N.D. Ill. 2005). Hicober fails to plead either prong in the FAC.

Intentional inducement requires allegations of "<u>specific acts</u> undertaken with knowledge of infringing behavior and with intent to cause infringement." *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 905 (S.D.N.Y. 2016) (emphasis added). The FAC conclusorily alleges that Temu induced infringement, FAC ¶ 96, without alleging any specific acts Temu took to encourage infringement or alleging the requisite intent. *See Lopez*, 2019 U.S. Dist. LEXIS 170715, at *32-33 (online service not liable absent allegations of specific acts of inducement); *Gym Door*, 206 F. Supp. 3d at 905. The FAC does allege that this infringement is "flooding the market" on a variety of "e-commerce stores, and/or websites," not just on the Temu platform. FAC ¶¶ 41, 44. Absent any specific allegations, it is implausible that Temu itself induced this infringement when the alleged infringement goes beyond one platform.

Hicober also fails to plead that Temu knew or should have known of the infringement. Knowledge of third-party infringement requires "more than a general knowledge or reason to know that its service is being used to sell counterfeit goods." *Tiffany, Inc.*, 600 F.3d at 107. Rather, Temu must have had "contemporary knowledge of which particular listings are infringing or will infringe in the future." *Id.*; *Annie Oakley Enters., Inc. v. Amazon.com, Inc.*, 559 F. Supp. 3d 780, 808 (S.D. Ind. 2021). The FAC contains no factual allegations that Temu knew of any particular products or listings that infringed on the Hicober trademark. *See Lopez*, 2019 U.S. Dist. LEXIS 170715, at *33-38 (online service not liable without allegations of knowledge as to specific third-party infringers). However, once properly notified, Temu promptly responded and removed the allegedly infringing listings. *See supra* II.C; *Tiffany, Inc.*, 600 F.3d at 106 (eBay not contributorily liable when it promptly removed listings after notice).

Because the FAC does not sufficiently allege intentional inducement or knowledge of particular infringement, Temu is not contributorily liable for infringement.

## IV. PLAINTIFF FAILS TO STATE ANY CLAIM UNDER STATE LAW

Hicober brings two claims under Illinois state law. It alleges that Temu is liable for deceptive trade practices under the IUDTPA and engaged in unfair competition under common law. For the reasons stated below, Hicober has failed to state a claim under state law.

### A. Temu's Conduct Did Not Occur Primarily and Substantially in Illinois

In order to bring an IUDTPA and Illinois common-law unfair competition claim, a plaintiff must allege that the transaction at issue occurred "primarily and substantially in Illinois." *Maui Jim, Inc. v. SmartBuy Guru Enters.*, No. 1:16 cv 9788, 2018 U.S. Dist. LEXIS 10093, at *13-14 (N.D. Ill. Jan. 23, 2018). Both claims are intended to regulate in-state conduct. An Illinois statutory claim is presumed to be without extraterritorial effect unless expressly stated. *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005). No such express provision exists in the IUDTPA. *Underground Sols., Inc. v. Palermo*, No. 13 C 8407, 2014 U.S. Dist. LEXIS 132441, at *29-30 (N.D. Ill. Sept. 22, 2014). This same principle extends to Illinois common-law claims that have been codified by Illinois state statutes. *Clairol, Inc. v. Andrea Dumon, Inc.*, 14 Ill. App. 3d 641, 650 (Ill. Ct. App. 1973) (IUDTPA codified common law unfair competition); *MJ & Partners Restaurant Ltd. v. Zadikoff*, 10 F. Supp. 2d 922, 930 (N.D. Ill. 1998) (same); *Maui Jim, Inc. v. SmartBuy Guru Enters.*, 386 F. Supp. 3d 926, 938-39 (N.D. Ill. 2019) (applying principle to common law claims codified by IUDTPA).

While there is no "single formula or bright line test," most courts analyze four factors to determine whether a transaction occurred primarily and substantially in Illinois: where the plaintiff resides; whether the plaintiff communicated with the defendant in Illinois; where the

alleged deception occurs; and where the alleged damage occurs. *Maui Jim*, 2018 U.S. Dist. LEXIS 10093, at *14 (citing *Avery*, 835 N.E.2d at 854).[7]

Hicober cannot satisfy any of these factors. Plaintiff is located in China. FAC ¶ 3. There is no allegation that Plaintiff communicated with Temu in Illinois. And, there is no showing of Illinois-specific deception or damage. The FAC only alleges infringement on a website available nationwide, including Illinois. *Id.* ¶¶ 14, 46. But, when alleged activities "occur throughout the United States, and Illinois just happens to be one of those states," the necessary nexus to Illinois is not met. *FireBlok IP Holdings, LLC v. Hilti, Inc.*, No. 3:19 cv 50122, 2021 U.S. Dist. LEXIS 243052, at *11-13 (N.D. Ill. Dec. 21, 2021) (deceptive statements regarding goods sold nationally not sufficient, even if some sold in Illinois); *see also Maui Jim*, 2018 U.S. Dist. LEXIS 10093, at *16-17 (generalized harm "in the marketplace" is insufficient); *Vulcan Golf, LLC v. Google, Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (deceptive domain names do not arise primarily in Illinois). Accordingly, Plaintiff has failed to state valid claims under the IUDTPA and common law unfair competition, and these claims must be dismissed.

### B. Plaintiff's State Law Claims Fail Along With the Lanham Act Claims

When Illinois state claims for unfair competition and deceptive trade practices are based on allegations of trademark infringement, they are subject to the same requirements found in the Lanham Act. *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007); *Am. Nat'l Ins. Co. v. Am. Nat'l Advisors, LLC*, No. 11-cv-4016, 2014 U.S. Dist. LEXIS 163294, at *58-59 (N.D. Ill. Nov. 21, 2014). As such, the state law claims rise or fall with the Lanham Act claims. *Desmond v. Chi. Boxed Beef Distribs.*, 921 F. Supp. 2d 872, 884-85 (N.D. Ill. 2013); *Bedrock*

---

[7] In cases involving contracts between two parties, courts have sometimes applied a nine-factor test. *See, e.g.*, *Van Zeeland v. McNally*, 532 F. Supp. 3d 557, 569-70 (N.D. Ill. 2021).

11

*Mgmt. v. Peoples Choice Entm't, Inc.*, No. 14-cv-06624, 2014 U.S. Dist. LEXIS 142023, at *6 (N.D. Ill. Oct. 6, 2014); *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994).

In particular, state law incorporates the same use-in-commerce requirement, and failure to allege use in commerce under the Lanham Act dooms the state law claims as well. *Flava Works, Inc. v. Gunter*, No. 17 C 1171, 2018 U.S. Dist. LEXIS 14183, at *13 (N.D. Ill. Jan. 30, 2018) (failure to allege "use in commerce" under Lanham Act dooms IUDTPA claim). Because Hicober failed to allege "use in commerce" as to Temu under the Lanham Act, it similarly fails under the state law claims. Both must be resolved according to the same legal principles. As such, the IUDTPA and unfair competition claims must be dismissed.

## V. CONCLUSION

Temu understands Hicober's frustration over any infringement. But, Hicober's quest for redress is more properly directed at the infringers—the third-party sellers, not Temu. Temu did not create the product, manufacture it, decide to sell it on Temu, or choose to use the Hicober mark. Temu is simply one of the many platforms used by the third-parties to sell their towels. Because the FAC fails to state a valid claim for infringement under either federal or state law, the Court should grant Temu's motion to dismiss the FAC with prejudice.

Dated: June 29, 2023

Respectfully submitted,

By: */s/* Steven P. Mandell
Steven P. Mandell (ARDC #6183729)
MANDELL MENKES LLC
333 W. Wacker Dr., Suite 450
Chicago, Illinois 60606
Telephone: (312) 251-1000
Email: smandell@mandellmenkes.com

Victor H. Jih (*pro hac vice*)
Russell L. Kostelak (*pro hac vice*)
Kelly H. Yin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1900 Avenue of the Stars, 28th Floor
Los Angeles, California 90067
Telephone: (323) 210-2999
Email: vjih@wsgr.com
Email: rkostelak@wsgr.com
Email: kyin@wsgr.com

*Counsel for Defendant Whaleco Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that a copy of the foregoing document has been served on June 29, 2023 via the Court's CM/ECF system on all counsel of record who have consented to electronic service.

*/s/* Steven P. Mandell