# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Shenzhen Kangmingcheng Technology Co., Ltd., <br><br> *Plaintiff,* <br><br> v. <br><br> WhaleCo, Inc., a Delaware corporation, Romantic Room Y, and Does 1 through 10, inclusive <br><br> *Defendants*. | **CASE NO.** 23-cv-02697 <br><br> **Judge**: Honorable Edmond E. Chang <br><br> **Magistrate Judge**: Honorable Sunil R. Harjani |

## PLAINTIFF'S RESPONSE TO DEFENDANT WHALECO, INC.'S

## MOTION TO DISMISS

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................. 1

II.    LEGAL STANDARDS ........................................................................ 2

III.   ARGUMENTS ..................................................................................... 2

   A.   Temu Does Not Dispute That the Hicober Mark Is Protectable And
      Defendants' Use Of Plaintiff's Trademark Is Likely To Cause Confusion
      Among Consumers. ........................................................................... 2

   B.   Plaintiff Has Sufficiently Pled Allegations to Support Its Claims for
      Temu's Direct Liability Under Lanham Act. ..................................... 3

   C.   Plaintiff Has Also Sufficiently Pled Allegations to Support Its Claims
      for Temu's Contributory Trademark Infringement. ........................ 7

   D.   Plaintiff Has Also Sufficiently Pled Allegations to Support Its Claims
      Under State Law ............................................................................. 8

IV.    CONCLUSION .................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*AK Futures LLC v. LCF Labs Inc.,*
No. 821CV02121JVSADSX, 2022 WL 17887590 (C.D. Cal. Sept. 28, 2022)………...……..6

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009)…………………………………………………2,7

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 570 (2007) …………………………………………………2,7

*Chanel, Inc. v. RealReal, Inc.,*
449 F. Supp. 3d 422, 441 (S.D.N.Y. 2020)………….….………….………….........5

*Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC.,*
790 F. Supp. 2d 732, 739 (N.D. Ill. 2011) ………………………………9

*Echo Travel, Inc. v. Travel Associates, Inc.,*
870 F.2d 1264, 1266 (7th Cir.1989)………………………………………3

*FireBlok IP Holdings, LLC v. Hilti, Inc.,*
No. 3:19-CV-50122, 2021 WL 6049964 (N.D. Ill. Dec. 21, 2021) ………..…………….......8

*Geinosky v. City of Chicago,*
675 F.3d 743, 745 (7th Cir.2012)………………………………………2

*H-D U.S.A., LLC v. SunFrog, LLC,*
282 F. Supp. 3d 1055, 1062 (E.D. Wis. 2017)…………...……………….………….......3

*H-D U.S.A., LLC v. SunFrog, LLC.,*
311 F. Supp. 3d 1000, 1030 (E.D. Wis. 2018)…………...……………….………….....4

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,*
456 U.S. 844, 854, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982)………..………………..….……7

*Kubiak v. City of Chi,*
810 F.3d 476, 480–81 (7th Cir.2016)………………………………………2

*Lopez v. Bonanza.com, Inc.,*
No. 17 CIV. 8493 (LAP), 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019)………...……….6

*Monotype Imaging, Inc. v. Bitstream, Inc.,*
03 C 4349, 2005 WL 936882, at *3 (N.D.Ill. Apr. 21, 2005)………...……………......7

*MJ & Partners Rest. Ltd. P'ship v. Zadikoff.,*
10 F.Supp.2d 922, 929 (N.D.Ill.1998)………………………………9

*Packman v. Chicago Tribune Co,*
  267 F.3d 628, 638 (7th Cir.2001)…………………………… 3

*Publ'ns Int'l, Ltd. v. Leapfrog Enters., Inc.,*
  No. 01 C 3876, 2002 WL 31426651 (N.D.Ill. Oct. 29, 2002) ………...……………….……....9

*Retail Clerks Int'l Ass'n v. Schermerhorn.,*
  373 U.S. 746, 753 (1963)………………………………………….……….…….2

*Scotch Whiskey Ass'n v. Barton Distilling Co.,*
  489 F.2d 809, 812 (7th Cir.1973)………………………………………6

*Slep-Tone Ent. Corp. v. Coyne*,
  41 F. Supp. 3d 707, 710 (N.D. Ill. 2014) …………………………………….2,6

*Sotelo v. DirectRevenue, LLC.,*
  384 F.Supp.2d 1219, 1233–34 (N.D.Ill.2005) …………………………………9

*Steele v. Bulova Watch Co.,*
  344 U.S. 280, 286, 73 S.Ct. 252, 97 L.Ed. 319 (1952)………...………………….……….......6

*Tiffany (NJ) Inc. v. eBay Inc.,*
  600 F.3d 93, 102-103 (2d Cir. 2010)…………………………………….……….4

*Van Zeeland v. McNally.,*
  532 F. Supp. 3d 557 (N.D. Ill. 2021)………………………………………8

*Vulcan Golf, LLC v. Google Inc.,*
  552 F. Supp. 2d 752, 778 (N.D. Ill. 2008)………………………………….....7

# I. INTRODUCTION

Plaintiff Shenzhen Kangmingcheng Technology Co., Ltd. ("Plaintiff") hereby responds to Defendant Whaleco, Inc.'s ("Temu") Motion to Dismiss ("Motion") Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).

Temu does not dispute that Plaintiff's Hicober mark is protectable and the fact that the Hicober mark was used by Temu and KOWSi, RONGCHENG (collectively, "Defendants") on Temu's website. Temu mainly argues that it does not use the Plaintiff's Hicober mark in commerce as a platform. However, the cases cited by Temu cannot support its arguments and Temu, as alleged by Plaintiff in the FAC, is not a platform like Amazon because Temu sellers are only responsible for the supply and delivery to Temu's warehouse, and the rest of the pricing, selling, marketing, logistics and distribution, and after-sales are all taken care of by Temu itself. *See* FAC, ¶8.

Temu also seeks to dismiss Plaintiff's claim for contributory infringement because it does induce any infringement or has any constructive knowledge of the infringement. *See* Dkt. 39, pp. 8-10. However, Temu regularly tends to suggest its sellers copy the best-selling products on Amazon or the other platforms and sell the same products on Temu. *See* Decl. of Li, ¶¶5-6. Temu also knew or should have known of the trademark infringement because the counterfeit goods were sold and offered to sell through Temu and Temu monitors and controls its and other sellers' advertisements.

Temu's argument also fails to warrant a dismissal of the FAC under state law because the transactions were made in Illinois and the counterfeit goods in connecting with Plaintiff's Hicober mark were sold to Illinois by Temu. Further, Plaintiff also sufficiently alleged its Lanham Act claims. Therefore, Temu's Motion should be denied.

## II. LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations need not be detailed to defeat such a motion, but they must "raise a right to relief above the speculative level." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under this standard, the Court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir.2016).

"The court must consider 'documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice,' along with additional facts set forth in Slep–Tone's brief opposing dismissal, so long as those facts 'are consistent with the pleadings.'" *Slep-Tone Ent. Corp. v. Coyne*, 41 F. Supp. 3d 707, 710 (N.D. Ill. 2014) (*citing Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir.2012)). The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the Complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 (1963).

## III. ARGUMENTS

### A. Temu Does Not Dispute That the Hicober Mark Is Protectable And Defendants' Use Of Plaintiff's Trademark Is Likely To Cause Confusion Among Consumers.

In order to state a claim under either section of the Lanham Act, Plaintiff must plead that (1) its mark is protectable, and (2) Defendants' use of the mark is likely to cause confusion among

consumers. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir.2001); *Echo Travel, Inc. v. Travel Associates, Inc.*, 870 F.2d 1264, 1266 (7th Cir.1989).

In its Motion, Temu does not dispute that Plaintiff's Hicober mark is protectable. *See* Dkt. 39, pp. 3-5. Temu also does not dispute the fact that the Hicober mark was used by Defendants on Temu's website. *Id*. Temu further admitted that it "has removed all of the allegedly infringing product listings contained in the FAC." *Id*, at p. 5. The only issue disputed by Temu is whether Temu is directly liable or contributorily liable for infringement under the Lanham Act. Plaintiff will also only focus on this issue addressed by Temu.

**B.      Plaintiff Has Sufficiently Pled Allegations to Support Its Claims for Temu's Direct Liability Under Lanham Act.**

Temu does not dispute the fact that the Hicober mark was used in commerce without any authority obtained from Plaintiff on Temu's website but merely dispute that Temu "owns and operates a platform that hosts third-party product listings and does not actually use the Hicober mark". *Id*. at pp. 5-8. Temu cited several non-binding cases to support its arguments that Temu is not actively involved in the infringing conduct itself. *Id*. However, these cases cannot support Temu's arguments here.

First, Temu cites the *SunFrog* case to support its argument that the platform does not "use" the trademark on the sellers' product listings and is not actively involved in the infringing conduct. *Id*. at p. 6. However, the court's position and conclusion in *SunFrog* case are in favor Plaintiff. In *SunFrog* case, the court ruled that unlike eBay who "is not actively involved in the listing, bidding, sale and delivery of any item offered for sale on its website," *SunFrog* "is intimately—indeed indispensably—involved in transactions involving infringing goods." *H-D U.S.A., LLC v. SunFrog, LLC*, 282 F. Supp. 3d 1055, 1062 (E.D. Wis. 2017). Then, "the Court finds that *SunFrog*'s motion to dismiss is wholly without merit." *Id*. In the 2018 order of *SunFrog* case, the court held that

*SunFrog* is actively involved in the infringing conduct, because "*SunFrog*, of course, not only advertises and offers infringing designs for sale and prints them onto products, it also ships the finished products and handles payment processing. Unlike the showroom, *SunFrog* exerts control over nearly every aspect of the advertising, sale, and manufacture of the infringing goods, save designing the mockups." *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1030 (E.D. Wis. 2018).

Similar here, unlike the traditional online platform like eBay and Amazon, Temu is responsible for the pricing, selling, marketing, importation, distribution, and transportation in interstate commerce of the infringing products. *See* FAC, ¶¶8, 34-35. Therefore, Temu "is intimately—indeed indispensably—involved in transactions involving infringing goods" like *SunFrog.* Further, on information and believe, if Temu is interested in some sellers' listings, Temu would buy all the products of the listings and sell the products by itself. *See* Decl. of Li, ¶4.

Second, Temu also cited the *Tiffany* case to support its argument that "[i]t is third-party sellers themselves who use the mark and are directly liable." *See* Dkt. 29, p. 6. However, in *Tiffany* case, the court held that eBay is not reliable for direct trademark infringement because eBay "used the mark to describe accurately the genuine Tiffany goods offered for sale on its website" under doctrine of nominative fair use. *Tiffany (NJ) Inc. v. eBay Inc*., 600 F.3d 93, 102-103 (2d Cir. 2010). It is distinguished with the current case as Temu was using or otherwise displaying in sale the Hicober mark to sell the counterfeit products which apparently caused likelihood of confusion about the source of Defendants' infringing products. *Id*. at 102.

Temu incorrectly argued that "FAC contains no further allegations to support these conclusory claims" regarding Temu's involvement in pricing, selling, offering for sell, marketing and delivering the infringing products, because Plaintiff has cited the article as evidence in the

FAC which describe Temu's business model to support its claims. *See* Dkt. 29, p. 6. Temu also cited the *Chanel* case to support its argument that Temu is not active involvement in the infringing activities. However, the court's position in *Chanel* case is in Plaintiff's favor. In *Chanel* case, the court held that "[e]ven though [The RealReal] [is] involved neither in the manufacture nor the affixing of [Chanel's] trademark to [any counterfeits], its sale of the [counterfeits] [is] sufficient 'use' for it to be liable for the results of such infringement." *Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422, 441 (S.D.N.Y. 2020). Therefore, the court denied RealReal's motion to dismiss "because Chanel has alleged sufficient factual content indicating that The RealReal has sold and advertised counterfeit Chanel products, and because the sale or advertisement of counterfeit products is sufficient use to establish liability under Section 1114(1)(a), Chanel's Section 1114(1)(a) claim may proceed on a direct infringement theory." *Id*. at 442.

Temu tries to argue that Plaintiff's allegations regarding the price control is contraindicated, which is also misstatement. *See* Dkt. 39, p. 7. According to the Declaration of Li that Temu might purchase all the seller or vendor's products. Decl. of Li, ¶4. Therefore, the sellers may set the price of the products it sells to Temu, and Temu would set the price of the products it sells to the customers. Temu further cited a denied order in California's state court to support its argument that it is the third-party seller, not Temu, who sells the infringing products. *See* Dkt. 39, pp. 7-8. However, Plaintiff has sufficiently and repeatedly alleged the differences between Temu and the other traditional platforms. The third-party sellers are only responsible for the supply and delivery of goods to Temu's warehouse, and the rest of the pricing, selling, marketing, logistics and distribution, and after-sales are all taken care of by Temu itself. *See* FAC, ¶8. Temu is not merely a service provider as it alleged.

Finally, Temu cited another two non-binding cases to support its false statement that "Hicober's delivery allegations do not go so far as to say that Temu itself imported, distributed, and transported the hair towels." *See* Dkt. 39, p. 8. Plaintiff clearly claims that Temu is responsible for importation, distribution, and transportation. *See* FAC, ¶34. The two non-binding cases are also distinguished with the current case here. The defendant in *Ak Futures* case "does not actually do the transporting itself," but "matches an ever-changing array of third-party transportation companies (like individual Uber drivers) to shipments." *AK Futures LLC v. LCF Labs Inc*., No. 821CV02121JVSADSX, 2022 WL 17887590, at *6 (C.D. Cal. Sept. 28, 2022). In this case, Temu is responsible for importation, distribution, and transportation. *See* FAC, ¶34. In *Lopez* case, plaintiff does not content that the defendant placed plaintiff's marks on any goods or sold service by use of Plaintiff's marks. *Lopez v. Bonanza.com, Inc*., No. 17 CIV. 8493 (LAP), 2019 WL 5199431, at *9-10 (S.D.N.Y. Sept. 30, 2019).

In sum, none of Temu's arguments suffice to warrant dismissal of the trademark infringement claim. The Supreme Court has held that the term "use in commerce" should be construed broadly "[i]n the light of the broad jurisdictional grant in the Lanham Act." *Slep-Tone Ent. Corp. v. Coyne*, 41 F. Supp. 3d 707, 713 (N.D. Ill. 2014) (*citing Steele v. Bulova Watch Co*., 344 U.S. 280, 286, 73 S.Ct. 252, 97 L.Ed. 319 (1952); *see also Scotch Whiskey Ass'n v. Barton Distilling Co*., 489 F.2d 809, 812 (7th Cir.1973)). Section 1127 provides that "a mark shall be deemed to be in use in commerce ... on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127; *See also Slep-Tone,* 41 F. Supp. 3d at 714. Here, Plaintiff has sufficiently alleged that its Hicober mark was used and displayed in the sale on Temu's website by Temu.

Therefore, Plaintiff has sufficiently alleged in its FAC that Temu was actively involved in the infringing activities by pricing, selling, marketing, importation, distribution, and transportation. *See* FAC, ¶¶8, 34-35. Plaintiff has raised "a right to relief above the speculative level" and pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp.,* 550 U.S. at 570; *Ashcroft*, 556 U.S. at 678. Thus, Temu's Motion should be denied.

## C. Plaintiff Has Also Sufficiently Pled Allegations to Support Its Claims for Temu's Contributory Trademark Infringement.

The Supreme Court concluded that contributory infringement occurs when a service provider "intentionally induces another to infringe a trademark" or if the service provider "continues to supply its [service] to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc*., 456 U.S. 844, 854, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). "Contributory infringement therefore requires proof of direct infringement by a third party, as well as defendants' intent and knowledge of the wrongful activities of its distributors." *Vulcan Golf, LLC v. Google Inc*., 552 F. Supp. 2d 752, 778 (N.D. Ill. 2008) (citing Monotype Imaging, Inc. v. Bitstream, Inc., 03 C 4349, 2005 WL 936882, at *3 (N.D.Ill. Apr. 21, 2005)). The claim that Overture monitors and controls the third-party advertisements is sufficient to plead the actual or constructive knowledge required to allege contributory infringement. *Id*.

Here, Temu does not dispute the fact of direct infringement by the sellers on Temu, but only disputes that it does not induce the infringement, or does not know or should have known of the infringement.

Plaintiff alleges that it is Temu's business strategic to flood the market with cheap and plentiful counterfeit goods. *See* FAC, ¶44. Further, according to the Temu seller's declaration,

Temu tends to suggest its sellers copy the best-selling products on Amazon or the other platforms and sell the same products on Temu. *See* Decl. of Li, ¶¶5-6. This fact is sufficient to raise "a right to relief above the speculative level" to support Plaintiff's claim for contributory infringement against Temu. *Bell Atl. Corp.,* 550 U.S. at 570.

Further, as the counterfeit goods were sold and offered to sell through Temu and Temu monitors and controls its and other sellers' advertisements, it is reasonable to conclude that Temu knew or should have known of the trademark infringement alleged in this case.

Therefore, Temu's Motion should be denied.

**D.    Plaintiff Has Also Sufficiently Pled Allegations to Support Its Claims Under State Law**

Temu first argues that Plaintiff failed to allege that transaction at issue occurred "primarily and substantially" in Illinois. *See* Dkt. 39, p. 10. The *Avery* court illuminated several factors courts use to determine whether the plaintiff's claims allegedly occurred primarily and substantially in Illinois: "(1) the claimant's residence; (2) the defendant's place of business; (3) the location of the item that was the subject of the transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice of law provisions; (7) where the deceptive statements were made; (8) where payments for services where sent; and (9) where complaints were to be directed." *FireBlok IP Holdings, LLC v. Hilti, Inc*., No. 3:19-CV-50122, 2021 WL 6049964, at *4 (N.D. Ill. Dec. 21, 2021) (citing *Van Zeeland v. McNally*, 532 F. Supp. 3d 557 (N.D. Ill. 2021)). Even though Plaintiff and Temu are not reside in Illinois, the transactions occurred in Illinois as the counterfeit goods were sold to this state by Temu and the unlawful, unfair, deceptive, and/or fraudulent business acts were also aimed to Illinois. The payments were also sent to Temu from Illinois. Therefore, Plaintiff's claims meet the "primarily and substantially" requirements.

The Illinois Uniform Deceptive Trade Practices Act ("DTPA") provides that "[a] person engages in a deceptive trade practice when ... the person: ... causes a likelihood of confusion or misunderstanding as to the source, sponsorship ... [etc.]." 815 ILCS 510/2(a)(2). Certain fraudulent conduct—using deceptive representations about the source or quality of the goods, for example— also violates the DTPA. *See, e.g.,* 815 ILCS 510/2(a)(4)-(6). The fact that some DTPA allegations sound in fraud and must be pleaded with specificity does not mean that all DTPA allegations require heightened specificity. Indeed, where a DTPA claim is based on a likelihood of confusion, courts have held that the ordinary notice-pleading standard applies. *See, e.g., Publ'ns Int'l, Ltd. v. Leapfrog Enters., Inc.*, No. 01 C 3876, 2002 WL 31426651, at *6 (N.D.Ill. Oct. 29, 2002) (holding that DTPA allegations regarding a likelihood of confusion did not necessarily constitute "fraud" such that Rule 9(b) would apply); *Sotelo v. DirectRevenue, LLC*, 384 F.Supp.2d 1219, 1233–34 (N.D.Ill.2005) (holding that computer user was not required to plead with particularity DTPA claim that defendants caused spyware to be downloaded onto his personal computer without his consent, notwithstanding use of the words "false," "falsely," "deceive," and "mislead").

In this case, the FAC clearly alleges what is infringed and what infringes, and Temu did not dispute the fact Plaintiff's Hicober mark was used on its website and is likely to cause confusion. Plaintiff's DTPA claim essentially mirrors its Lanham Act claim; and where factual allegations underlying a Lanham Act claim also form the basis for a claim under the DTPA, the DTPA claim "must rise or fall based on the Lanham Act claim." *Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC*, 790 F. Supp. 2d 732, 739 (N.D. Ill. 2011) (*citing MJ & Partners Rest. Ltd. P'ship v. Zadikoff*, 10 F.Supp.2d 922, 929 (N.D.Ill.1998)). Further, Plaintiff has sufficiently alleged that the Hicober mark was used in commerce by Temu as stated above. Therefore, Temu's Motion should be denied.

## IV. CONCLUSION

Based on the forgoing reasons, Plaintiff has sufficiently stated all its claims and Temu's Motion to Dismiss should be denied.

Date: July 31, 2023

/s/ Tianyu Ju

Tianyu Ju, Esq.
iris.ju@glacier.law
312-499-2666
GLACIER LAW LLP
200 E. Randolph Dr., Ste. 5100
Chicago, IL 60601

Ruoting Men, Esq.
Ruoting.men@glacier.law
Glacier Law LLP
200 E. Randolph Dr., Ste. 5100
Chicago, IL 60601
***Attorney for Plaintiff***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 31, 2023, I electronically filed the foregoing file with the Clerk of Court using the CM/ECF system on all counsel of record who have consented to electronic service.

Date: July 31, 2023

/s/ Tianyu Ju

Tianyu Ju, Esq.
GLACIER LAW LLP
200 E. Randolph Dr., Ste. 5100
Chicago, IL 60601
iris.ju@glacier.law
312-499-2666
***Attorney for Plaintiff***