IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Shenzhen Kangmingcheng Technology Co., Ltd.,**<br><br>Plaintiff,<br>v.<br><br>**PDD Holdings Inc. and Whaleco, Inc.,**<br><br>Defendants. | **Case No. 1:23-cv-02697**<br><br>Hon. Edmond E. Chang |

# WHALECO, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................1

II. PLAINTIFF FAILS TO STATE ANY CLAIM UNDER FEDERAL LAW.............................2

    A.    Temu Is Not Directly Liable Under the Lanham Act .............................................2

    B.    Temu Is Not Contributorily Liable for Infringement Under the Lanham Act.........4

III. PLAINTIFF FAILS TO STATE ANY CLAIM UNDER STATE LAW .................................6

    A.    Temu's Conduct Did Not Occur Primarily and Substantially in Illinois.................6

    B.    Plaintiff's State Law Claims Fail Along with the Lanham Act Claims...................7

IV. CONCLUSION...........................................................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bruno v. Glob. Experience Specialists, Inc.*,
    No. 19-cv-06710, 2020 U.S. Dist. LEXIS 161374 (N.D. Ill. Sept. 3, 2020) ......................6

*Fireblok IP Holdings, LLC v. Hilti, Inc.*, No. 3:19 cv 50122,
    2021 U.S. Dist. LEXIS 243052 (N.D. Ill. Dec. 21, 2008) ...................................................6

*Flava Works, Inc. v. Gunter*, No. 17 C 1171,
    2018 U.S. Dist. LEXIS 14183 (N.D. Ill. Jan. 30, 2018) ......................................................6

*Inwood Lab'ys, Inc. v. Ives Lab'ys Inc.*, 456 U.S. 844 (1982)..........................................................4

*Maui Jim, Inc. v. SmartBuy Guru Enters.*, No. 1:16 cv 9788,
    2018 U.S. Dist. LEXIS 10093 (N.D. Ill. Jan. 23, 2018) ......................................................5

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
    No. C13-1932, 2015 U.S. Dist. LEXIS 92890 (W.D. Wash. July 16, 2015) ......................5

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) .........................................................2, 5

*Tre Milano, LLC v. Amazon.com, Inc.*, No. B234753,
    2012 Cal. App. Unpub. LEXIS 6163 (Cal. Ct. App. Aug. 22, 2012) ..................................3

*Watts v. Network Sols., Inc.*, No. 99-2350,
    1999 U.S. App. LEXIS 28884 (7th Cir. Oct. 27, 1999).......................................................4

## STATUTES

Lanham Act............................................................................................................................1, 4, 6, 7

## I. INTRODUCTION

In an attempt to salvage its claims against Temu, Hicober has submitted a declaration debuting new allegations (from someone purporting to be the "manager" of a company with "a seller account on Temu"). ECF No. 44-1 (the "Li declaration" or "Li Decl."). Neither the declarant nor their company is involved with the hair towels at issue in this case. Instead, the declaration makes the broad allegations that: (1) in some situations, Temu may sell products directly to consumers; (2) Temu managers have supposedly told the declarant to copy top-selling products on other platforms and sell them on Temu; and (3) based on undisclosed "information" the declarant has, Temu "tends to suggest this approach to almost all sellers." Li Decl. ¶ 4-6.

Even after cobbling together the First Amended Complaint ("FAC," ECF No. 33) and the Li declaration, however, Hicober's claims against Temu still fail as a matter of law. As explained in Temu's opening memorandum (ECF No. 39, "Mot.") and in this reply, the arguments in Hicober's opposition brief (ECF No. 44, "Opp.") confirm that:

- Temu was not actively involved in the infringing conduct itself, so it is not directly liable under the Lanham Act.

- Temu neither induced anyone to infringe the Hicober mark, nor knew that the hair towels were infringing the mark, so Temu is not contributorily liable.

- Hicober cannot proceed with its state law claims because there is no Illinois-specific deception or damage.

- Hicober has failed to allege its state law claims because its direct and contributory infringement claims under the Lanham Act fail.

Accordingly, the Court should grant Temu's motion to dismiss.

## II. PLAINTIFF FAILS TO STATE ANY CLAIM UNDER FEDERAL LAW

### A. Temu Is Not Directly Liable Under the Lanham Act

Hicober agrees that platforms must be "actively involved in the infringing conduct itself" to be held liable for direct infringement; otherwise, the platform has not "used" a mark in commerce. Opp. at 3-4; *see also Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 102-03 (2d Cir. 2010) (absent platform's active involvement in infringing conduct, third-party sellers are the ones using the mark and are directly liable). Temu's opening brief explained how the FAC fails to allege facts constituting active involvement here: among other things, there are no allegations that Temu created the hair towels, added the Hicober mark to any listings, authenticated the towels as genuine Hicober products, or maintained inventory of the towels. Mot. at 6-8.

In its Opposition, Hicober argues it has sufficiently alleged that Temu was actively involved in infringing conduct by pricing, selling, marketing, and delivering the hair towels. Opp. at 4-7. But the FAC concedes that Temu did not do those things:

<u>Pricing</u>. Hicober points to an unsubstantiated claim in the new Li declaration — "If Temu is interested in your products, it will purchase all your products and sell the products by itself on the platform" (Li Decl. ¶ 4) — and speculates that in some situations "the sellers may set the price of the products it sells to Temu and Temu would set the price of the products it sells to the customers." Opp. at 5. Unfortunately for Hicober's direct infringement claim, the FAC already made clear that it was the third-party sellers (not Temu) who "priced" the towels at "10% of the Plaintiff's price." FAC ¶¶ 38-39.

Likewise, the article that Hicober relies upon for the assertion that Temu retains all pricing control actually says something very different. As detailed in Temu's opening brief, the article states that "sellers *almost* gave up the pricing power." ECF No. 39-1 at 8 (emphasis added). And

contrary to Hicober's assertion, the article does not attribute to Temu the discretionary power to set prices as a seller, but rather only the ability "to select the cheapest product" for its platform from comparable suppliers. *Id.* at 4; Mot. at 7. Hicober's sole response now is that the article "describe[s] Temu's business model to support [Hicober's] claims." Opp. at 4-5. The article indeed purports to "describe" aspects of Temu's "business model," but nothing in it establishes that Temu was "actively involved" in infringing conduct.

<u>Selling and marketing</u>. Hicober's opposition makes the bald claim that "third-party sellers are only responsible for the supply and delivery of goods to Temu's warehouse," with Temu being responsible for everything else. Opp. at 5. The FAC clarifies, however, that it was the third-party sellers — not Temu — who listed the products that improperly contained the Hicober mark, and then used those listings to sell their own goods. FAC ¶¶ 27-32. And tellingly, the FAC does not contain a single factual allegation about any specific actions Temu took to market or advertise the hair towels.

Of course, for its part, Temu operates the platform that hosted the third-party sellers' product listings. But this does not mean that Temu itself was selling or advertising the hair towels on its site. *See Tre Milano, LLC v. Amazon.com, Inc.*, No. B234753, 2012 Cal. App. Unpub. LEXIS 6163, at *36-37 (Cal. Ct. App. Aug. 22, 2012) (Amazon does not sell or advertise goods by providing platform for product listings).

<u>Delivering</u>. As with marketing, the FAC contains no allegations of specific acts that Temu took to import, distribute, or transport the hair towels. Instead, as Temu explained in its opening brief, the article cited by Hicober states that Temu only facilitates delivery logistics. Mot. at 8. Like Amazon, DHL, or Fedex, Temu handles fulfillment services that provide assistance with storage and shipping. Providing fulfillment services is not active involvement in infringing conduct

that would allow a platform to be held directly liable. *See Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 U.S. Dist. LEXIS 92890, at *15-16 (W.D. Wash. July 16, 2015) (Amazon is not directly liable for its "Fulfillment By Amazon" service, including shipment of products). In its opposition, rather than identifying any particular factual allegations, Hicober doubles down on its conclusory approach and reiterates: "Plaintiff clearly claims that Temu is responsible for importation, distribution, and transportation." Opp. at 6 (citing FAC ¶ 34, which is a near-identical unsupported conclusion).

In sum, Hicober's opposition provides no basis to show that Temu "used" the Hicober mark in commerce. Hicober thus cannot hold Temu directly liable under the Lanham Act.

### B. Temu Is Not Contributorily Liable Under the Lanham Act

The parties agree that contributory infringement requires allegations of a defendant's intent or knowledge of wrongful activities. *Compare* Opp. at 7 *with* Mot. at 8. As explained in Temu's opening memorandum, to be contributorily liable for infringement, a defendant must either (1) intentionally induce another to infringe a trademark, or (2) supply a product to another with actual or constructive knowledge that the product is infringing. *Watts v. Network Sols., Inc.*, No. 99-2350, 1999 U.S. App. LEXIS 28884, at *6 (7th Cir. Oct. 27, 1999) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982)). Hicober's opposition illustrates that it cannot satisfy either prong.

<u>Intentional inducement</u>. In attempting to show intentional inducement, Hicober relies on the allegation that Temu's general "business strategy [is] to flood the market with cheap and plentiful counterfeit goods." Opp. at 7 (citing FAC ¶ 44). Hicober also cites to the Li declaration's claim that "Temu's managers have advised me, a Temu seller, to copy the best-selling products on Amazon or the other platforms and sell the same products on Temu." Li Decl. ¶ 5.

Critically, there is no allegation — in either the FAC or Li declaration — that Temu asked anyone to copy the hair towels at issue here, let alone to place the Hicober mark on copied towels. So the allegation about what Temu managers supposedly told him: (1) has nothing to do with the hair towels; and (2) would not constitute trademark infringement, given that "copying" and selling the same products is not trademark counterfeiting.

Actual or constructive knowledge. It is undisputed that there are no factual allegations in the FAC that Temu knew of any particular products or listings infringing on the Hicober trademark. Instead, Hicober's opposition offers one sentence to assert that Temu had some sort of constructive knowledge: "as the counterfeit goods were sold and offered to sell through Temu and Temu monitors and controls its and other sellers' advertisements, it is reasonable to conclude that Temu knew or should have known" of infringement of the Hicober mark. Opp. at 8.

As an initial matter, the FAC does not allege that Temu monitors and controls sellers' advertisements. But even if the FAC had made such an allegation, Temu's opening brief already demonstrated that knowledge of third-party infringement requires "more than a general knowledge or reason to know that its service is being used to sell counterfeit goods." *Tiffany, Inc.*, 600 F.3d at 107. Temu must have had "contemporary knowledge of which particular listings are infringing or will infringe in the future" (*id.*), which Hicober has failed to allege. Further, all e-commerce platforms would in some way be "monitoring" their sites to provide reliable services to their users.

\* \* \*

Hicober relies on allegations in the Li declaration and its opposition brief to oppose dismissal. Although courts will allow plaintiffs to "*elaborate* on their factual allegations 'so long as the new elaborations are consistent with the pleadings,'" Hicober's brief and the Li declaration debut new allegations that are not found anywhere in the FAC. *Bruno v. Glob. Experience*

*Specialists, Inc.*, No. 19-cv-06710, 2020 U.S. Dist. LEXIS 161374, at *6-7 (N.D. Ill. Sept. 3, 2020) (emphasis added). In any event, the FAC is insufficient to state direct or contributory infringement claims against Temu, and Hicober's opposition brief or the Li declaration cannot save it. *Id.*

### III. PLAINTIFF FAILS TO STATE ANY CLAIM UNDER STATE LAW

#### A. Temu's Conduct Did Not Occur Primarily and Substantially in Illinois

Temu's opening brief explained that, in order to bring IUDTPA and Illinois common-law unfair competition claims (both of which are intended to regulate in-state conduct), a plaintiff must allege that the transaction at issue occurred "primarily and substantially in Illinois." *Maui Jim, Inc. v. SmartBuy Guru Enters.*, No. 1:16 cv 9788, 2018 U.S. Dist. LEXIS 10093, at *13-14 (N.D. Ill. Jan. 23, 2018). In response, Hicober makes several new uncited assertions: "the counterfeit goods were sold to [Illinois] by Temu," the unlawful conduct was "aimed to Illinois," and "payments were also sent to Temu from Illinois." Opp. at 8.

The reason why Hicober's opposition makes these assertions without citation is simple: the FAC actually does not contain allegations about Illinois-specific deception or damage. To the contrary, the FAC states that goods bearing copies of the Hicober mark were advertised and offered for sale "throughout the United States via Temu" (¶ 63) and that the defendants "target[ed] business activities towards consumers in the United States," including those in Illinois (¶ 14). The FAC thus establishes that Hicober cannot state valid claims under the IUDPTA and common law unfair competition because, when alleged activities "occur throughout the United States, and Illinois just happens to be one of those states," the necessary nexus to Illinois is not met. *FireBlok IP Holdings, LLC v. Hilti, Inc.*, No. 3:19 cv 50122, 2021 U.S. Dist. LEXIS 243052, at *11-13 (N.D. Ill. Dec. 21, 2008).

### B. Plaintiff's State Law Claims Fail Along with its Lanham Act Claims

Hicober agrees that, when Illinois state claims for unfair competition and deceptive trade practices are based on allegations of trademark infringement, they are subject to the same requirements found in the Lanham Act. *See* Opp. at 9 (acknowledging that its IUDPTA claim "must rise or fall based on the Lanham Act claim") (citation omitted). Temu's opening memorandum showed that, in particular, Illinois state law incorporates the same use-in-commerce requirement as the Lanham Act. Because Hicober fails to allege that Temu used its marks in commerce under the Lanham Act, it similarly fails to do so under the state law claims. *See Flava Works, Inc. v. Gunter*, No. 17 C 1171, 2018 U.S. Dist. LEXIS 14183, at *13 (N.D. Ill. Jan. 30, 2018).

Hicober's opposition gives no meaningful response to those points. Instead, Hicober pivots to arguing that its IUDPTA claim does not need to be pleaded with "heightened specificity." Opp. at 9. Having to plead a nexus to Illinois is not a heightened pleading requirement. But regardless of whether heightened specificity applies to Hicober's state law claims, the upshot remains that: (1) there is no necessary nexus to Illinois; and (2) Hicober fails to allege direct or contributory infringement under the Lanham Act, which dooms the state law claims too.

### IV. CONCLUSION

Far from "using" the Hicober mark in commerce or inducing anyone to do so, Temu — one of several platforms that third-party sellers used to sell their counterfeit Hicober towels — worked with Hicober to stop the infringement. When properly notified, Temu removed all of the allegedly infringing product listings Hicober identified.

Temu respectfully requests that the Court dismiss Hicober's claims with prejudice. Hicober has already had the chance to amend its complaint. Subsequently, Hicober supplemented the

allegations in the FAC with new claims in the Li declaration (with different permutations of allegations contradicting each other). Despite those opportunities, Hicober still cannot state a valid infringement claim under federal or state law, and further amendment would be futile.

Dated: August 14, 2023

Respectfully Submitted,

By: */s/ Steven P. Mandell*
Steven P. Mandell (#6183729)
Brian D. Saucier (#6226006)
MANDELL MENKES LLC
333 W. Wacker Dr., Suite 450
Chicago, Illinois 60606
Telephone: (312) 251-1000
smandell@mandellmenkes.com
bsaucier@mandellmenkes.com

Victor Jih (*pro hac vice*)
Russell L. Kostelak (*pro hac vice*)
Kelly H. Yin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1900 Avenue of the Stars, 28th Floor
Los Angeles, California 90067
Telephone: (323) 210-2999
Facsimile: (866) 974-7329
vjih@wsgr.com
rkostelak@wsgr.com
kyin@wsgr.com

*Counsel for Defendant Whaleco, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that a copy of the foregoing document has been served on August 14, 2023 via the Court's CM/ECF system on all counsel of record who have consented to electronic service.

/s/ Steven P. Mandell